MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District | |
|---|---|---|
| Name *(under which you were convicted):* William Edward Echols | | Docket or Case No.: 3:19-Cr-21-TAV-HBG |
| Place of Confinement: Manchester Federal Corrections Complex | | Prisoner No.: 54071-074 |
| UNITED STATES OF AMERICA | Movant *(include name under which convicted)* | |
| | V. William Edward Echols | |

**MOTION**

1. (a) Name and location of court which entered the judgment of conviction you are challenging:


   (b) Criminal docket or case number (if you know): 3:19-Cr-21-TAV-HBG

2. (a) Date of the judgment of conviction (if you know): 10/13/21
   (b) Date of sentencing: 09/03/20

3. Length of sentence: 238 months

4. Nature of crime (all counts): one count of conspiracy to possess with the intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841.(a)(1), 841(B)(1)(A), and 846; and one count of possessing methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(A)(1), 841(b)(1)(A), 846, and 18 U.S.C. §2.


5. (a) What was your plea? (Check one)
   (1) Not guilty ✓   (2) Guilty ☐   (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
   what did you plead guilty to and what did you plead not guilty to? N/A


6. If you went to trial, what kind of trial did you have? (Check one)   Jury ✓   Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes ☐   No ✓

8. Did you appeal from the judgment of conviction?   Yes ✓   No ☐

9. If you did appeal, answer the following:

(a) Name of court: U.S. District Court, E.D. Tenn. at Knoxville U.S. court of Appeals Sixth Cir

(b) Docket or case number (if you know): 20-6088

(c) Result: Conviction affirmed

(d) Date of result (if you know): October 13th, 2021

(e) Citation to the case (if you know): _____

(f) Grounds raised: A. Echols argues that the evidence was insufficient to support his conviction for conspir to possess with intent to distribute at least 50 grams of Methamphetamine.

B. Echols like wise argues that the evidence was insufficient to support his conviction for Possession with intent to distribute between five and 50 grams of Methamphetamine

(g) Did you file a petition for certiorari in the United States Supreme Court? Yes ☐ No ☑

If "Yes," answer the following:

(1) Docket or case number (if you know): N/A

(2) Result: N/A

(3) Date of result (if you know): N/A

(4) Citation to the case (if you know): N/A

(5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

Yes ☐ No ☑

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: N/A

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

        Yes ☐     No ☐

(7) Result: N/A

(8) Date of result (if you know): N/A

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: N/A

(2) Docket of case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

        Yes ☐     No ☐

(7) Result: N/A

(8) Date of result (if you know): N/A

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:     Yes ☐    No ☐

(2) Second petition:   Yes ☐    No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** ~~___~~ Ineffective Assistance: Lawyer R. Deno Cole was inneffective for failing to have suppression hearing

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

I asked my lawyer to have a suppression hearing to suppress statements that were mistated and coerced. I also informed him that I wasnt mirandized during this custodial interrogation on top of being intoxicated. His response was we didn't need to have one because we had all the evidence right here in discovery. I pointed out to him, that in discovery it states that I was advised of my rights and that I agreed to speak with law enforcement. which is false. I was never given any miranda warnings and during that interrogation I stated that Maybe I new a lawyer. Continued on Attached paper labeled Ground one (A) Supporting facts

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

I didn't raise this issue because I didn't know any better and I believe now 1s2dose the time

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☑

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☑

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

**GROUND TWO:** ~~Witness~~ Failure to impeach

_____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See Attached paper Leboeled Ground 2(A) Failure to impeach ... ID "Discovery"

(b)  **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☑

(2)   If you did not raise this issue in your direct appeal, explain why:

Because I believed now was the time to do so

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:



**GROUND THREE:** Ground 3 Failure to inform defendant he was a career criminal Criminal Law § 46.4 counsel - duties)

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Attached page ~~the~~ labeled ground 3 (a) supporting facts

(b) **Direct Appeal of Ground Three:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

          Yes ☐      No ☑

    (2)  If you did not raise this issue in your direct appeal, explain why:

Didn't know I could I think now is the time to do so

(c) **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

          Yes ☐      No ☑

    (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

    (3)  Did you receive a hearing on your motion, petition, or application?

          Yes ☐      No ☑

    (4)  Did you appeal from the denial of your motion, petition, or application?

          Yes ☐      No ☑

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

          Yes ☐      No ☑

    (6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

---

**GROUND FOUR:** "Due process 14th admendment violation, 5th admendment, & 16th Amendment violation

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See attached paper labeled Ground 4(a) Supporting facts

---

(b) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Still i believed in what my lawyer was telling me and now is time 2 raise issue

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

　　Yes ☐　No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

　　Yes ☐　No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

　　Yes ☐　No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:


13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: On all 4 grounds I never raised any. I spoke with my lawyer and asked 4 a suppression hearing and was told we didn't need one. I informed him of Bakers statements that conflict actual evidence for example: he stated Richie gave him a bag at the Landfill he placed under recycle bin. In police report it states only 1 bag weighing 799 grams. The career criminal thing I didn't argue because I didn't know better. Basicly I placed my life and trust in my lawyers hands and I feel he failed to perform reasonably

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?　Yes ☐　No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a) At the preliminary hearing:

R. Deno Cole P.O. Box 57 Knoxville, Tennessee 37901

(b) At the arraignment and plea:

R. Deno Cole P.O. Box 57 Knoxville, Tennessee 37901 - 0057

(c) At the trial:

R. Deno Cole P.O. Box 57 Knoxville Tennessee 37901 - 0057

(d) At sentencing:

R. Deno Cole P.O. Box 57 Knoxville, Tennessee 37901 - 0057

(e) On appeal:

(f) In any post-conviction proceeding:

(g) On appeal from any ruling against you in a post-conviction proceeding:

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ☐     No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ☐     No ☑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?     Yes ☐     No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

Therefore, movant asks that the Court grant the following relief:

To Vacate, Set aside, lower, or retrial

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on 09/27/2022.

(month, date, year)

Executed (signed) on 09/26/2022 (date)

William Edward Echols
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

### Ground one: Failure to have a suppression hearing

Lawyer R. Deno Cole, was ineffective for failing to have a suppression hearing. I asked him to have a suppression hearing because I wasn't Mirandized during a custodial interrogation, and I was heavily intoxicated. His response was "we didn't need to have one because we had all the evidence right here in Discovery." I had, "Advised him that in Discovery it stated that I was advised of my rights, and that I signed a waiver and that I agreed to speak with law enforcement. which is false. I was never given any Miranda warnings and during that interrogation, I stated that Maybe I should have a lawyer present. In response I was told by the officers that I didn't need a lawyer because I wasn't in any trouble, that they were just investigating a "situation." Though during trial. Task Force officer Robert Thornton states, "that I signed a miranda waiver and waived my rights. which is false. I.D. at Trial Transcript page 62 of 191 pg. ID # 1077 (17-25), Also 71 of 191 pg ID # 1086 (2-3), and page 63 of 191 page ID# 1078 (1-4) Again during that interview I was heavily intoxicated To corroborate my condition. Deputy Rodney Stinson states in Trial Transcripts page 49 of 191 page ID 1064 (1-12) " that we were drug tested page 50 of 191 page ID 1065 (1-2) All 5 of us tested positive for drugs. Also he states around 9:30 A.M. on the day he found drugs and prior to our interrogation, that he noticed me lagging behind walking slower than normal staggering and sort of stumbling around and sweating

①

Profusely. I.D. Trial transcript pg 42 of 191 page ID 1057 (17-24) Special Agent Tyler Gustafon testimony corroborates ~~officer Stinson's testimony as far as my mental, Physical, and~~ emotional condition. ID. at trial transcripts page 162 of 191 page ID 1177 (23-25), Also page 163 of 191 page ID 1178 (1-9) Special Agent Tyler Gustafon talks about a user amount of Meth. When the drugs were found I felt the same as officer Stinson. Trial Transcript pg 40 of 191 page ID# 1056 (9-13) None of us believed it to really be drugs so all 5 of us consumed way more than the usual users amount. During that custodial interrogation I was never told I was free to leave at anypoint during questioning. I was shackled, transported from the annex to the main Jefferson county jail. Held with 24 others in the drunk tank. The statements introduced at trial were Co-ercive statements interrogators tried getting me to admit to and wrongly stated during trial. Furthermore these statements violate "Due process" 14th Amendment, 5th Admendment. No person shall become a witness against self. Also I believe its in violation of 4th Admendment. My Lawyer's failure to have suppression hearing also violates "due process." Also his failure to have suppression hearing allowed the courts to falsely hear inadmissable prejudicial statements. **Trial ~~transcripts~~** Pg ID# 1031 (1-8), Pg ID# 1078 (1-8), Pg ID# 1041 (19-22), pg ID# 1043 (5-23) pg ID# 1081 (8-12), Pg ID# 1082 (12-22), Pg ID# 1084 (19-25), pg ID# 1085 (1-12, 20-25) pg 1092 (1-13), Pg ID# 1093 (1-11), Pg# ID# 1099 (1-9) pg 84 of 191 (1-9) pg 89 of 191 (21-25), Page 90 of 191 (1-5), Page 91 of 191 (1-5)

②

Page 92 of 191 (1-14). Also many more places in my trial transcripts.

Had my lawyer had a suppression hearing maybe many of these false incriminating statements would have been suppressed and the jurrors wouldn't have heard these statements which could easily make them prejudice against my innocence. As a citizen myself I do rely on the comfort of lawenforcement and maybe a doctor. Even though they're professionals they also make mistakes. Though the mistakes made in this situation is costing me 19 years 10 months of my life.

There for I ask whomever this step of my legal process goes to to carefully observe the things that were overlooked and have cost me to miss 4 years of my familys lives and possibly 14 more years.

As a result Deno failed to have of suppression hearing these false statements violates 5th Admendment, 14th Duc process, I didn't sign a waiver & never felt like I was free to leave at anytime I was shackled so these false statements comes from a custodial interrogations

③

The issue of voluntariness of a confession is a mixed question of fact and law. *United States v. Brown*, 557 F.2d 541, 547 (6th Cir. 1977). The applicable standard is whether the confession was the product of a free and rational choice, and therefore the focus is upon the state of mind of the accused at the time the confession was made. In *Brown*, we quoted from *Culombe v. Connecticut*, 367 U.S. 568, 602, 6 L. Ed. 2d 1037, 81 S. Ct. 1860 (1961):{1977 U.S. App. LEXIS 6}

The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred {565 F.2d 89} years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be <u>used</u> against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. 557 F.2d at 546. *See United States v. Washington*, 431 U.S. 181, 97 S. Ct. 1814, 52 L. Ed. 2d 238, 45 U.S.L.W. 4465, 4467 (1977).

A **waiver** of **Miranda** rights need not be made in writing and the prosecution does not need to show that a defendant's **waiver** of **Miranda** rights was express; an implicit **waiver** of the right to remain silent is sufficient to admit a defendant's statement into evidence. <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 384, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010) (citing <u>North Carolina v. Butler</u>, 441 U.S. 369, 376, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979)); <u>see United States v. Adams</u>, 583 F.3d 457, 467 (6th Cir. 2009) (quoting <u>Butler</u>, 441 U.S. at 373-76) ("[C]ourts may infer an implied **waiver** 'from the actions or words of the person interrogated.'"). "Where the prosecution shows that a **Miranda** warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied **waiver** of the right to remain silent." <u>Berghuis</u>, 560 U.S. at 384; <u>see Adams</u>, 583 F.3d at 467 (quoting <u>United States v. Nichols</u>, 512 F.3d 789, 798-99 (6th Cir. 2008)) ("'[W]aiver may be clearly inferred . . . when a defendant, after being properly informed of his rights and indicating that he understands them, nevertheless does nothing to invoke those rights' and speaks."). "As a general proposition, the law can presume that an individual who, with a full understanding of **{2016 U.S. Dist. LEXIS 7}** his or her [**Miranda**] rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." <u>Berghuis</u>, 560 U.S. at 385. "To establish an implied **waiver**, the prosecution must show (1) that a **Miranda** warning was given, (2) that it was understood by the accused, and (3) that the subsequent statement was uncoerced." <u>United States v. Miller</u>, 562 F. App'x 272, 289 (6th Cir.) (citing <u>Berghuis</u>, 560 U.S. at 384), <u>cert. denied sub nom. Dorsey v. United States</u>, 135 S. Ct. 184, 190 L. Ed. 2d 143 (2014), and <u>cert. denied sub nom. Maddox v. United States</u>, 135 S. Ct. 192, 190 L. Ed. 2d 149 (2014), and <u>cert. denied sub nom. Cooper v. United States</u>, 135 S. Ct. 730, 190 L. Ed. 2d 443 (2014).

1

Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions
·ions of the Matthew Bender Master Agreement.



Where an investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied "the assistance of counsel" in violation of the Sixth Amendment to the Constitution as made obligatory upon the States by the Fourteenth Amendment and that no statement elicited by the police during the interrogation may be used against him at a criminal trial. This rule applies to trials begun after June 22, 1964.

3yfcases                                              1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

While serving a sentence in a Michigan jail, Randall Fields was escorted by a corrections officer to a conference room where two sheriff's deputies questioned him about allegations that, before he came to prison, he had engaged in sexual conduct with a 12-year-old boy. In order to get to the conference room, Fields had to go down one floor and pass through a locked door that separated two sections of the facility. See App. to Pet. for Cert. 66a, 69a. Fields arrived at the conference room between 7 p.m. and 9 p.m.[1] and was questioned for between five and seven hours.[2]

<*pg. 24> At the beginning of the interview, Fields was told that he was free to leave and return to his cell. See id., at 70a. Later, he was again told that he could leave whenever he wanted. See id., at 90a. The two interviewing deputies were armed during the interview, but Fields remained free of handcuffs and other restraints. The door to the conference room was sometimes open and sometimes shut. See id., at 70a-75a.

About halfway through the interview, after Fields had been confronted with the allegations of abuse, he became agitated and began to yell. See id., at 80a, 125a. Fields testified that one of the deputies, using an expletive, told him to sit down and said that ``if [he] didn't want to cooperate, [he] could leave.'' Id., at 89a; see also id., at 70a-71a. Fields eventually confessed to engaging in sex acts with the boy. According to Fields' testimony at a suppression hearing, he said several times during the interview that he no longer wanted to talk to the deputies, but he did not ask to go back to his cell prior to the end of the interview. See id., at 92a-93a.

When he was eventually ready to leave, he had to wait an additional 20 minutes or so because a corrections officer had to be summoned to escort him back to his cell, and he did not return to his cell until well after the hour when he generally retired.[3] At no time was Fields given Miranda warnings or advised that he did not have to speak with the deputies.

The State of Michigan charged Fields with criminal sexual conduct. Relying on Miranda, Fields moved to suppress his confession, but the trial court denied his motion. Over the renewed objection of defense counsel, one of the interviewing deputies testified at trial about Fields' admissions. The jury convicted Fields of two counts of third-degree criminal sexual conduct, and the judge sentenced him to a term of 10 to 15 years of imprisonment. On direct appeal, the Michigan Court of Appeals affirmed, rejecting Fields' contention that his **statements** should have been suppressed because he was subjected to custodial interrogation without a Miranda warning. The court ruled that Fields had not been in custody for purposes of Miranda during the interview, so no Miranda warnings were required. The court emphasized that Fields was told that he was free to leave and return to his cell but that he never asked to do so. The Michigan Supreme Court denied discretionary review.

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Fields then filed a petition for a writ of habeas corpus in Federal District Court, and the court granted relief. The Sixth Circuit affirmed, holding that the interview in the conference room was a ``custodial interrogation'' within the meaning of Miranda because isolation from the general prison population combined with questioning about conduct occurring outside the prison makes any such interrogation custodial per se. The Court of Appeals reasoned that this Court clearly established in Mathis v. United States, 391 U.S. 1, 88 S. Ct. 1503, 20 L. Ed. 2d 381 (1968), that ``Miranda warnings must be administered when law enforcement officers remove an inmate from the general prison<*pg. 25> population and interrogate him regarding criminal conduct that took place outside the jail or prison.'' 617 F.3d 813, 820 (CA6 2010); see also id., at 818 (``The central holding of Mathis is that a Miranda warning is required whenever an incarcerated individual is isolated from the general prison population and interrogated, i.e.[,] questioned in a manner likely to lead to self-incrimination, about conduct occurring outside of the prison''). Because Fields was isolated from the general prison population and interrogated about conduct occurring in the outside world, the Court of Appeals found that the state court's decision was contrary to clearly established federal law as determined by this Court in Mathis. 617 F.3d, at 823.

We granted certiorari. 562 U.S. --, 131 S. Ct. 1047, 178 L. Ed. 2d 862 (2011).

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without ==due process of law==; nor shall private property be taken for public use, without just compensation.

USCONST                                                    1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## A. Adequacy of Warnings Given

**Miranda** prescribed the following four warnings:

"[A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the**{2016 U.S. Dist. LEXIS 8}** presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."Powell, 559 U.S. at 59-60 (alterations in original) (quoting **Miranda**, 384 U.S. at 479). "The four warnings **Miranda** requires are invariable, but [the Supreme Court] has not dictated the words in which the essential information must be conveyed." Id. at 60 (citing cases). No "talismanic incantation" is required. California v. Prysock, 453 U.S. 355, 359, 101 S. Ct. 2806, 69 L. Ed. 2d 696 (1981) (per curiam). "In determining whether police officers adequately conveyed the four warnings, . . . '[t]he inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by **Miranda**.'" Powell, 559 U.S. at 60 (quoting Duckworth, 492 U.S. at 203).

Here, the substance of the warnings given reasonably conveyed to Madrigal his rights as required by **Miranda**. Accordingly, if there was a valid **waiver**, Madrigal's statements may be admitted into evidence against him.

## B. **Waiver**

Here, there was no written **waiver** executed by Madrigal (in either English or Spanish). Whether an implied **waiver** occurred depends on whether Madrigal understood his **Miranda** rights when they were read to him in Spanish by Special Agent Zarro, which will also determine whether any such implied **waiver** was knowingly and intentionally made.

The Court's inquiry when**{2016 U.S. Dist. LEXIS 9}** determining the validity of a **Miranda waiver** has two dimensions: voluntariness and comprehension. Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986). It does not appear that Defendant Madrigal is challenging whether the **waiver** was voluntary.2 Therefore, the Court will focus on the second dimension, that is, whether the **waiver** was knowingly and intentionally made. In other words: whether the suspect waived his **Miranda** rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Burbine, 475 U.S. at 421. The issue for the Court is not whether the "criminal suspect [knew] and [understood] every possible consequence of a **waiver** of the Fifth Amendment privilege," but whether the "suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." Colorado v. Spring, 479 U.S. 564, 574, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987). This determination "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Edwards v. Arizona, 451 U.S. 477, 482, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)).

Accordingly, the government must establish by a preponderance of the evidence that, under the totality of the circumstances, the defendant made "an uncoerced choice and [had] the requisite level of comprehension" in order for the Court to conclude that a defendant's **Miranda** rights have been waived, Burbine, 475 U.S. at 421. Both the voluntariness and comprehension aspects of the **waiver** inquiry should be examined "primarily **from** the perspective of the police," such that where "[the] police had no reason to believe that [the defendant] misunderstood the warnings, . . . there is no basis for invalidating [the] **Miranda waiver**." Garner v. Mitchell, 557 F.3d 257, 263 (6th Cir. 2009) (en banc); United States v. Al-Cholan, 610 F.3d 945, 954 (6th Cir. 2010).

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Under **Miranda**, statements made by a defendant during a custodial interrogation must be suppressed, unless he has been provided certain warnings and has waived his rights. A defendant may waive the rights conveyed by the **Miranda** warnings, provided the **waiver** is made voluntarily, knowingly and intelligently. The government bears the burden of proving by a preponderance of the evidence that a defendant so waived his **Miranda** rights. The question of whether a defendant has waived his **Miranda** rights has two distinct components: First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the **waiver** must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the **Miranda** rights have been waived.

3yfcases                                           1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

The standard for reviewing the voluntariness of an asserted **<u>Miranda</u>** **<u>waiver</u>** is essentially the same as that for reviewing the voluntariness of a confession. First, the relinquishment of the right must be voluntary in the sense that it is the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the **<u>waiver</u>** must be made with full knowledge of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the **<u>Miranda</u>** rights are waived.

3yfcases                                      1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

The government bears the burden of proving by a preponderance of the evidence that defendant voluntarily waived his **Miranda** rights. The central inquiry in determining whether a **waiver** was voluntary is whether the police engaged in coercive activity. The voluntariness of a **waiver** has always depended on the absence of police overreaching, not on free choice in any broader sense of the word. There are two aspects to a valid **waiver**: First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the **waiver** must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Whether a valid **waiver** occurred depends upon the totality of the circumstances.

3yfcases                                                    1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A prosecutor may not use a defendant's statements which stem from custodial **interrogation** unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 Ohio Misc. 9, 36 Ohio Op. 2d 237 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it", the following warnings are required to be given to a suspect:

> 1. the person must be warned that he has a right to remain silent;2. that any statement he does make may be used against him;3. and that he has a right to the presence of an attorney, either appointed or retained.

*Miranda*, 384 U.S. at 444.{2002 U.S. Dist. LEXIS 20}

With respect to petitioner's first statement, the Michigan Court of Appeals found that this statement had been volunteered and was not the result of custodial **interrogation**. Accordingly, *Miranda* warnings were not required and no Fifth Amendment violation occurred. *People v. Terry,* Slip. Op. at * 1. With respect to petitioner's second statement, the Michigan Court of Appeals rejected petitioner's argument that this second statement was "tainted" by the first statement, because the first statement had been voluntarily made by petitioner. The Michigan Court of Appeals further found that the mere fact that Officer Williams informed petitioner that Eddie Coleman had made a statement placing the blame upon petitioner, whether true or false, was insufficient to render petitioner's statement involuntary. The Michigan Court of Appeals noted that petitioner was read his *Miranda* warnings prior to giving his second statement. The Michigan Court of Appeals further observed that petitioner had previous experience with **interrogations** and could comprehend the meaning of waiving his rights. While petitioner suffered superficial injuries, there was no indication that he was otherwise injured, **{2002 U.S. Dist. LEXIS 21} intoxicated, {208 F. Supp. 2d 789}** or drugged. The Michigan Court of Appeals further noted that petitioner did not claim that he was deprived of food and was given a chance to sleep. Under the totality of circumstances, the Michigan Court of Appeals concluded that petitioner's waiver of his rights was knowing, voluntary, and intelligent. *Id.* at 2000 Mich. App. LEXIS 2516, * 2.

If fairly supported by the record, state court findings on subsidiary questions, such as the length and circumstances of the **interrogation**, and the defendant's prior experience with *Miranda* warnings, are conclusive on a federal habeas court that is asked to decide whether the confession was voluntary. *Muniz v. Johnson,* 132 F.3d 214, 219 (5th Cir. 1998)(citing *Miller v. Fenton,* 474 U.S. 104, 117, 88 L. Ed. 2d 405, 106 S. Ct. 445 (1985)). Whether a defendant understood his or her *Miranda* rights is also a question of fact underlying the question of whether his waiver of those rights was knowing and intelligent. Thus, on federal habeas review, a federal court has to presume that the state court's factual finding that a defendant fully understood what was being said and asked of him was correct unless the petitioner{2002 U.S. Dist. LEXIS 22} shows otherwise by clear and convincing evidence. *Valdez v. Ward,* 219 F.3d 1222, 1231 (10th Cir. 2000).

The Michigan Court of Appeals found that petitioner's first statement was admissible because it was a voluntary statement which was not made in response to custodial **interrogation**. The special procedural safeguards outlined in *Miranda* are required not merely when a suspect is taken into custody, but instead where a suspect in custody is subjected to **interrogation**. *Rhode Island v. Innis,* 446 U.S. 291, 300, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980). "'**Interrogation**', as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id Miranda* warnings are required whenever a person in custody is subject either to express questioning or its "functional equivalent". *Rhode Island v. Innis,* 446 U.S. at 300-301.

3yfcases                                                      1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



Under U. S. Const. amend. V, a defendant is guaranteed the right to remain silent and to the assistance of counsel during custodial interrogation and that the statements obtained in violation of these rights cannot be used by the prosecution. A defendant, however, can waive these rights as long as the waiver is voluntary, knowing, and intelligent.

3yfcases                                         1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Ground 2: (A) Failure to impeach ... ID "Discovery"

on October 30th 2018 Bill Baker JR. D.O.B. May 2, 1988
S.S.# 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 was interviewed at the Jefferson City Sherriff's
office. Also present for the interview was Brandon Smith, 4th Judicial
District Drug Task Force (4th. D.T.F.) Prior to the interview, Baker
had been advised of his Miranda rights by David Norton, J.C.S.O.
Baker signed a written waiver form. When the writer and Smith began
the interview, they asked Baker if he understood his rights and remembers
the form he signed? He said he did and he did and he agreed to speak with
Law enforcement. Baker provided the following: Baker was an inmate at
the Jefferson County Jail. Baker was part of a J.C.S.O. work crew. He
and several other individuals were taken by bus to various roads in the
county to pick up litter. The corrections officer in charge of the crew was officer
Stinson. The work crew consisted of the following people: #1. Bill Baker,
#2 Brian paul Appleton, #3 Treandez Carr, #4. Timothy Richie, #5. William
Echols. on October 29th. 2018. Before lunch time, they were walking along
the road they were assigned when Appleton and Richie found a black grocery
style bag containing five bags of what appeared to be methamphetamine.
Baker saw inside the bag. The bag contained a large amount of crystal
substance. Baker then went to the back of the group where officer
Stinson was. He and carr spoke with Stinson to distract him. Later Baker
approached Richie and asked for a piece of the substance. Baker put it
in his mouth and realized it was real methamphetamine. Baker then took
some of the meth out of his mouth and gave it to carr. After
a while, the group stopped to eat lunch. During this time, Richie and Appleton
had the meth in a bucket. After a short period of time they began walking
again. Baker observed Appleton put a quantity of methamphetamine in the
trailer. It had fallen inside the couch cushions of a couch

...side of the trailer.     Baker described this bag as being a large bag of meth. Before going back to jail, the crew went to the landfill, Baker and the others unloaded the trailer. Richie gave a bag of meth, containing between a half to an ounce of meth. Baker did not want the bag and put it under the recycle bin at the landfill. Echols was suppose to pick it up. Baker looked to see if the bag of methamphetamine was still in the trailer. It was not. Baker assumed that either Carr or Richie had gotten the bag. This was because, Baker had seen the bag and then the next time he looked it was gone and the only people who had gotten out of the bus in the intervening time was Carr and Richie. While driving someone put a bag of meth which contained approximately a quarter ounce of meth, on Bakers lap. Baker did not know who did it. Baker hid it in his shoe. When the bus got to the jail and the crew got to the "shoe room" Baker put the bag of methamphetamine between some crates. This was because Baker did not want to put the bag of meth in his anal cavity to smuggle into the jail. When the crew got back to their cells Baker went to bed. He was worried because the others were acting crazy and Baker didn't want to get into trouble. Baker heard Appleton talk about hiding meth inside the jail. Baker also saw Richie hide some meth in an electrical box. The next morning Echols came into Bakers cell and shook some pants. After Echols shook the pants, Baker noticed meth shards on his floor. Baker thought Echols was trying to get him into trouble. Baker thought they were suspicious of him since he went to bed the night before. After this occured, officer stinson arrived and spoke with the group. Stinson told the group that a large amount of meth had been found on the bus. Baker told officer stinson the meth was his even though it wasn't. Baker did not know who put the bag on the bus. Baker was tryin to keep every one out of

Baker indicated that he had Richie was one of

get meth from his sister. Richie had told Baker he had arranged this several weeks ago. The suppliers were two hispanics from morristown. The amount of Meth they were suppose to drop was 4 Kilograms. Another person probably involved was "Bama" Bama was married to Richie's sister. Bama was also in jail in Jeff. County. He had escaped from jail recently and was caught in Gatlinburg. There was a cell phone in jail. White mike had it. Baker ~~police~~ never distributed any of the meth the group found to anyone in the jail. Baker only used some of it personally.

Had Deno introduce Bill Baker full interrogation as evidence at trial the jury would have seen and noticed ALL of Bill Bakers conflicting Statements. For example during trial Baker claims Shane Richie approached us and offered us a ounce that we refused. If we refused it why & how would Baker place it under a recycle bin and why would I agree to pick it up later. In a jefferson county police report it said bag under recycle Bin weighed 799 grams. Baker stated we went to the pod he went to sleep but during trial he said we all got high in Shanes room which is false. Since Deno failed to impeach Bill Baker Jr. by previous statements not being introduced the jurrors heard tainted testimony. In favor of Bills cooperation plea also During my direct Appeal they used Bills testimony to Affirm my conviction

Ground 3 (a) Supporting facts

Ground 3 - (A) (Criminal Law § 46.4 - Counsel - duties)

R. Deno Cole was ineffective because he failed to inform defendant William Edward Echols # 54071-074 that he was a career criminal. In fact on the day William Edward Echols was suppose to change his plea 09/26/2019 William Echols spoke with United States probation officer who told him he wasn't a career offender, then spoke with Deno Cole who said the same. We went to have the plea hearing and I didn't agree with everything the D.A. was saying and the judge didn't accept my plea so my plea hearing got changed till 10/17/2019 during the intervening time I spoke with Deno Cole and again he informed me "That I had a good case, that he would love to take my case to trial." "He also stated that I wasn't a career offender, and I wouldn't get more than 10-15 years.

Result: I took counsel's advise went to trial. Lost trial to lawyers multiple failure's to object. Got Sentenced to 238 months. — Had Deno told me I would be a Career Criminal I could have taken my co-operation plea and gotten sentenced under the 10 year mandatory minimum and recieved a lighter sentence. Also I have yet to even see my 3rd Revised R.S.R. Sheet.

(7)

## Ground 4(a) supporting facts

**Ground 4 - (A)** " Due process 14ᵗʰ Amendmant, 5ᵗʰ Amendmant 6ᵗʰ Amendmant
Lawyer R. Deno cole was ineffective for failing to challenge the
validity of the "lost" miranda waiver post trial; during trial
and these off record unrecorded statements that officers falsely
said I made. During this interrogation I stated Maybe I need
a lawyer present and was told by interrogators I didn't need a
lawyer because I wasn't in any trouble, that they were just
investigating a situation.

**Results:** By failing to do this, law enforcement had the priveledge
to get on the stand and inflate statements they were tryin to
get me to confess to. They were allowed to present unrecorded
statements and evidence thats no where in the records. They
didn't lose anyone else miranda form Tim Richie nor Bill BAKer
JR. Fact was I was never mirandized

Had R. Deno cole challenge the validity of the waiver
these false accusations of a confession may not of been
admissable to the Jury. He would of shown that I didn't
willfully and knowingly ~~boooom~~ waive my rights and
agree to talk to law enforcement that day. The jurrors
Kept getting it instilled in their head that I confessed
which is false. Had R. Deno cole had a suppression hearing /
taint hearing / or challenged the validity of the lost
miranda waiver my trial could have been dramatically
~~different. It was clear Bill Baker Jr.~~ did what he was forced to do
~~Just to get his time cut~~

(8)

Thank you for taking the time to review my case. I hope that we can come to a agreement that will satisfy myself as well as the courts. I dont believe I deserve to be in prison for 18 years 10 months.

Sincerly
William Echols

NAME William Echols
REG. NO. 54071-074    QTR. Clay A
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 4000
MANCHESTER, KY 40962-4000

⇔54071-074⇔
District Clerk
800 Market ST
suit 130
Knoxville, TN 37902
United States

RECEIVED

SEP ? ? 2022

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

(LEGAL PAPERS)